# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**JOSE ANTONIO TORRES,**

     **Petitioner,**

**v.**                                  **Case No. 8:18-cv-2201-VMC-JSS**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

     **Respondent.**
_____/

## ORDER

     This cause is before the Court on Petitioner Jose Antonio Torres's *pro se* second amended petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 14). Having considered the petition, the supporting memorandum (Doc. 15), the response (Doc. 19), and the reply (Doc. 23), the Court **ORDERS** that the petition is **DENIED**:

### Procedural History

     The State of Florida charged Torres with kidnapping (count one), arson (count two), and first degree murder (count three). (Doc. 19-2, Ex. 2). A jury convicted Torres as charged on counts one and two and convicted him of the lesser-included offense of second degree murder on count three. (Doc. 19-3, Ex. 4). The state court sentenced Torres to life in prison for counts one and three, and to 30 years in prison for count two. (Doc. 19-3, Ex. 5). The state appellate court *per curiam* affirmed the convictions and sentences. (Doc. 19-4, Ex. 11). Torres filed a motion for postconviction relief

1

under Florida Rule of Criminal Procedure 3.850. (Doc. 19-4, Ex. 14). The state court denied the motion in part and struck it with leave to amend in part. (Doc. 19-4, Ex. 15). Torres filed an amended motion. (Doc. 19-5, Ex. 16). The state court entered a final order denying postconviction relief. (Doc. 19-6, Ex. 17). The state appellate court *per curiam* affirmed the lower court. (Doc. 19-6, Ex. 20).

**Factual Background**[1]

On the morning of November 29, 2008, the Hardee County Fire Rescue and the Hardee County Sheriff's Office responded to a burned car by the side of the road in Hardee County, Florida. An examination of the car's trunk revealed the badly burned remains of Malik Muhammad. The medical examiner opined that the cause of death was blunt impact to the head, with contributing factors of thermal burns to one hundred percent of total body surface area and smoke inhalation.

Muhammad had participated in drug deals with Torres. Torres lived in Sebring, Highlands County, Florida, with his girlfriend Tonya and Tonya's brother Jorel Cardona. Torres's sister dated a man named Dan Lopez. On the night of November 28, 2008, Torres, Cardona, and Lopez were together at a party. Torres was upset with Muhammad because of a drug deal that went bad and said that he was going to rob Muhammad.

Torres said that Muhammad was going to pick him up. Torres asked Lopez to meet him later at another acquaintance's house. Lopez and Cardona saw a car pick up

---

[1] The factual background is derived from the trial transcript and appellate briefs.

Torres. Lopez and Cardona drove Torres's van to the designated meeting spot. Lopez and Cardona waited for a time before leaving. After a phone call with Torres, however, they returned to the meeting sport. When they arrived, Torres was waiting for them in the car he had been picked up in.  Torres said to follow him.

A few minutes later, they stopped. Torres asked Lopez for help moving Muhammad's body from the front seat of the car to the trunk. Lopez observed a wound on the top of Muhammad's head. Torres told Lopez that he shot Muhammad. After Torres and Lopez placed Muhammad's body in the trunk of the car, Torres got back into the driver's seat. When the car failed to start, Torres poured gasoline in the car.

After successfully starting the car, however, Torres drove the car with Muhammad's body in the trunk while Lopez and Cardona followed in the van. The two vehicles traveled for about 15 to 20 minutes before Torres pulled over to the side of the road. Torres poured more gasoline in the car, lit a piece of paper on fire, and threw the paper inside the car.

Torres and Cardona dropped Lopez off and returned home. Later, Torres burned the clothing that Cardona wore the night of the offenses on a barbeque grill outside the residence. Jennifer Tabor, an acquaintance of Torres's, testified that about a week after Thanksgiving, Torres told her that he kidnapped Muhammad before shooting him and burning the car. On December 10, 2008, crime scene technician Kathleen Perez searched Torres's residence. On a grill in the backyard, she found remnants of what appeared to be clothing, a shoe, a shoelace, and eyelets for threading a shoelace.

**Standards of Review**

## I.   The AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*,

535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."); *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (stating that "[t]he state court's application of clearly established federal law must be objectively unreasonable" in order for a federal habeas petitioner to prevail and that even the state court's "clear error" is insufficient to meet this standard).

The state appellate court affirmed the denial of postconviction relief without discussion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

II.   Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of

deficient performance by counsel and resulting prejudice. *Id.* at 687. "[T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 688. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. A court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Torres must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, Torres must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard

'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

## Exhaustion Of State Remedies; Procedural Default

A federal habeas petitioner must exhaust his claims by raising them in state court before presenting them in his petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001); *see also Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (stating that unexhausted claims that "would now be procedurally barred in state court due to a state-law procedural default" provide no basis for federal habeas relief).

## Timeliness

A one-year statute of limitations applies for filing a § 2254 petition. 28 U.S.C. § 2244(d)(1). This limitations period begins running when the state court judgment

becomes final. 28 U.S.C. § 2244(d)(1)(A). It is tolled while state postconviction motions are pending. 28 U.S.C. § 2244(d)(2). However, the limitations period is not tolled by the filing of a federal habeas petition. *See Duncan v. Walker*, 533 U.S. 167 (2001). Timeliness is analyzed on a claim by claim basis. *See Zack v. Tucker*, 704 F.3d 917 (11th Cir. 2013).

Respondent concedes that Grounds One through Six, which were raised in Torres's original § 2254 petition, are timely. Respondent contends that Grounds Seven and Eight, which Torres did not raise until he filed his first amended § 2254 petition, are untimely. The Court agrees.

After Torres's conviction and sentence were affirmed on direct appeal, the state appellate court denied rehearing on March 30, 2015. (Doc. 19-4, Ex. 12). Torres's judgment became final 90 days later, on June 29, 2015, upon expiration of the time to petition for a writ of certiorari in the United States Supreme Court. *See Bond v. Moore*, 309 F. 3d 770 (11th Cir. 2002).[2] His one-year limitations period started running the next day, on June 30, 2015. Torres allowed all but two days of the period to run untolled before he filed his postconviction motion on June 28, 2016. (Doc. 19-4, Ex. 14). That motion remained pending until the appellate court's mandate issued on October 24, 2018. (Doc. 19-6, Ex. 21). By that date, Torres had already filed his original § 2254 petition, meaning that Grounds One through Six are timely. However,

---

[2] Because the 90th day fell on Sunday, June 28, 2015, Torres had until Monday, June 29, 2015, to petition for a writ of certiorari. *See* Fed. R. Civ. P. 6(a)(1)(C).

the one-year limitations period expired on October 26, 2018 because, as addressed, the filing of Torres's original § 2254 petition had no tolling effect.

Torres did not present Grounds Seven and Eight until he filed his first amended petition on November 27, 2018. (Doc. 8). If the limitations period expires before amendment of a habeas petition, an additional claim is untimely unless it "relates back" to the original petition. "An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). *See Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000) ("'Relation back' causes an otherwise untimely claim to be considered timely by treating it as if it had been filed when the timely claims were filed."). In Ground Seven, Torres argues that the State violated his federal due process rights by allegedly failing to preserve a potentially exculpatory pocketknife found at the crime scene. In Ground Eight, Torres argues that trial counsel was ineffective in failing to move for judgment of acquittal based on insufficient evidence to prove first degree murder. These new claims do not relate back to the claims raised in Torres's original, timely § 2254 petition.

Torres's reply does not challenge Respondent's assertion of untimeliness. Nor does it argue that he is entitled to equitable tolling, *see Holland v. Florida*, 560 U.S. 631 (2010) or that he has proven his actual innocence to allow for review of the untimely claims, *see McQuiggin v. Perkins*, 569 U.S. 383 (2013). Accordingly, the Court finds that

Grounds Seven and Eight are untimely.[3] Grounds One through Six are timely and are addressed below.

## Discussion

Ground One

Torres claims that trial counsel was ineffective in failing to move to suppress evidence about the items recovered from the grill. Torres contends that the search warrant was invalid because it was not signed by a judge. Torres also argues that the probable cause affidavit was invalid because it was not made under oath and was not signed. Torres contends that all testimony about the burned remnants recovered from the grill would have been excluded had counsel filed a motion to suppress.

The state court denied Torres's ineffective assistance claim:

Defendant asserts counsel failed to file a motion to suppress an illegal search on the basis that the search warrant was defective because the supporting affidavit was not sworn to by the police officer, it contained false and misleading information, and it was not signed by a judge. However, the search warrant at issue does not appear in the record of the above-styled case, and appears to be related to cases out of Highlands County as stated by Defendant on page 46 of his motion: "As a result of the search, Petitioner was arrested for possession of cannabis and drug paraphernalia. Petitioner was charged in Case #08-001472 CFMA, and violation of probation case # 01-00900 CFMA in Highlands County". Neither the assistant state attorney . . . nor the assistant public defender . . . referenced in the claim are attorneys of record in the above-styled case. The depositions referenced in the claim, which Defendant states were held on June 25, 2009, were conducted before charges in this case were filed.

---

[3] Even if Grounds Seven and Eight were timely, the Court would find that they are unexhausted and procedurally defaulted for the reasons argued by Respondent. (Doc. 19, pp. 18-20). Torres has not demonstrated that an exception applies to overcome the procedural default. *See Smith*, 256 F.3d at 1138. Therefore, Grounds Seven and Eight are barred from federal habeas review.

Nonetheless, Defendant asserts that counsel's failure to file the motion to suppress allowed the introduction of inadmissible evidence, namely items found in a barbeque grill at 2418 Fernway Street in Sebring that were not connected to anyone by DNA or size. Defendant asserts testimony about the evidence created suspicion in the jury's mind that Defendant burned incriminating evidence in the grill in the back of his apartment. Defendant asserts that had counsel filed the motion to suppress on the basis that the search warrant was invalid and the search illegal, the testimony concerning the evidence would have been suppressed. Defendant concludes that since there was no other physical evidence connecting him to the case, then a strong probability exists that the jury would not have convicted him.

The record indicates Jorel Cardona testified that Defendant was at his sister's house (Alba Torres) when he and Dan Lopez change clothes and Defendant tells Alba to burn the clothing. Afterwards, Defendant takes Dan home and then Mr. Cardona and Defendant go to their house at 2418 Fernway in Sebring. The next day, Defendant took Mr. Cardona's clothing and burned it in the grill behind the house at 2418 Fernway. Kathleen Perez, a crime scene technician, testified that she found remnants of what appeared to be a shoe, shoelaces, eyelets that the laces go through, and remnants of clothing in the barbeque grill in the backyard of 2418 Fernway Street. She further testified that she could not determine what size shoe it was or what kind of shoe it was.

After consideration, the Court finds Defendant has failed [to] establish that counsel was ineffective and has failed to demonstrate prejudice. First, the burned remnants of clothing from 2418 Fernway Street were not key pieces of evidence for which counsel should have sought suppression in this case. The clothing belonged to Mr. Cardona – not Defendant – and the jury was not presented with any DNA, fingerprint, or other forensic evidence from the burned clothing that related to the kidnapping, murder, or arson in this case. Second, in the face of all of the other evidence presented at trial, the admission of testimony regarding the burned remnants of Mr. Cardona's clothing does not undermine the confidence of the trial outcome. More specifically, the jury heard testimony from multiple witnesses that Defendant felt the victim owed him money and that he planned to rob the victim. The jury heard testimony from eyewitnesses who saw the victim's body and either helped or witnessed Defendant move the body and then burn the car. The jury also heard testimony that Defendant confessed to kidnapping the victim, shooting him, and burning the car. Given the totality of the

11

> evidence, there is no reasonable probability that the outcome of the trial
> would have been different. Ground 3 is **denied**.

(Doc. 19-4, Ex. 15, pp. 2-3) (state court's record citations omitted) (emphasis in original).

Torres has not shown entitlement to relief. The state court did not unreasonably conclude that in light of the State's evidence as a whole, Torres failed to show prejudice as a result of counsel's failure to file a motion to suppress. Even absent testimony about the items from the grill, the State presented significant evidence of Torres's guilt. As set out in the state court's order, this evidence included eyewitness recollections and Torres's incriminating statements. Torres does not show that the state court unreasonably applied *Strickland*'s prejudice prong in denying his claim. Nor does he establish that the state court's decision was based on an unreasonable factual determination. Therefore, Torres is not entitled to relief on this claim.[4]

Torres raises two other claims within Ground One. First, Torres argues that counsel was ineffective in not moving to dismiss the charges. Torres appears to argue that the allegedly invalid search warrant rendered the charging document invalid and the court would have been obligated to dismiss the charges. Torres did not exhaust this

---

[4] Respondent provides a copy of the search warrant, which was signed by a judge. (Doc. 19-6, Ex. 23). Respondent also provides a copy of the application for search warrant, which was made under oath. (Doc. 19-6, Ex. 22). However, the state court's order is clear that the court did not have these documents. As Torres correctly states in his reply, this Court's review is limited to the record that was before the state court when it considered his postconviction motion. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (stating that review under § 2254 is limited to "the record before the state court that adjudicated the claim on the merits."). Accordingly, this Court does not consider these documents in reviewing the claim Torres presented to the state court.

claim by raising it in his postconviction proceedings. (Doc. 19-4, Ex. 14, pp. 45-49; Doc. 19-5, Ex. 16, pp. 40-45). Because Torres cannot return to state court to raise this claim in an untimely postconviction motion, *see* Fla. R. Crim. P. 3.850(b), it is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Torres does not establish that an exception applies to overcome the default. *See id.*

Alternatively, notwithstanding the default, Torres does not show that counsel was ineffective. Torres does not establish that dismissal of the charges would have been an available remedy even if the search warrant was deemed invalid. Rather, as Torres argues within Ground One, an available remedy would be the exclusion of the evidence in question. Under both the Fourth Amendment to the United States Constitution and the Florida Constitution, a search warrant must be based on probable cause. U.S. Const. amend. IV; Art. I, § 12, Fla. Const. Under the judicially-created exclusionary rule, "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure. . . . This prohibition applies as well to the fruits of the illegally seized evidence." *United States v. Calandra*, 414 U.S. 338, 347 (1979). Torres cannot show that counsel was ineffective in not moving to dismiss the charges or that he was prejudiced as a result of counsel's performance.

Finally, Torres appears to claim that counsel was ineffective in not moving to suppress the items from the grill because had those items been suppressed, other witnesses or testimony would not have been developed. Although Torres's vague allegation is difficult to discern, he appears to argue that as a result of the unlawful

search, Cardona became involved in the investigation, and Cardona told law enforcement about Lopez and Tabor. This claim of ineffective assistance is unexhausted because Torres did not raise it in his postconviction proceedings. (Doc. 19-4, Ex. 14, pp. 45-49; Doc. 19-5, Ex. 16, pp. 40-45). Torres does not show that an exception applies to overcome the resulting procedural default. *See Smith*, 256 F.3d at 1138.

Furthermore, notwithstanding the default, Torres fails to show entitlement to relief. He does not show that the search was illegal and that counsel was therefore ineffective in not filing a motion to suppress evidence obtained during the search. Nor has he shown prejudice under *Strickland*. Torres has not established that but for the allegedly illegal search of his residence, the police would not have uncovered additional evidence or certain witnesses. This conclusory and speculative claim does not warrant federal habeas relief. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that an applicant's "unsupported allegations" that are "conclusory in nature and lacking factual substantiation" cannot sustain an ineffective assistance claim); *see also Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992) ("Conclusory allegations of ineffective assistance are insufficient.") (quotation omitted). Accordingly, Torres is not entitled to relief on Ground One.[5]

---

[5] Torres appears to assert that the state postconviction court erred in not conducting an evidentiary hearing. To the extent Torres intends to raise this claim of postconviction court error with respect to Ground One and any other ground in his federal habeas petition, it is not cognizable on federal habeas review. *See Quince v. Crosby*, 360 F.3d 1259, 1262 (11th Cir. 2004) ("[W]hile habeas relief is available to address defects in a criminal defendant's judgment

Ground Two

Torres contends that trial counsel was ineffective for failing to inform the trial court that the prosecution violated *Giglio v. United States*, 405 U.S. 150 (1972) by presenting false testimony of witnesses Dan Lopez, Jorel Cardona, and Jennifer Tabor.

The state court denied Torres's claim:

Defendant asserts trial counsel was ineffective for failing to alert the court that the prosecutor committed a Giglio violation during trial. Defendant alleges that the prosecutor relied on false, prejudicial, fraudulent, and fabricated testimony to obtain and secure the conviction, and he knew the falsity of the testimonial evidence and failed to correct it. More specifically, Defendant asserts the State used witness Jennifer Tabor to support their theory of premeditation in that Defendant confessed to Ms. Tabor he shot the victim in the head. Defendant asserts the State knew this was false because the prosecutor argued that the medical examiner would testify that the victim died from blunt trauma to the head, burns, and smoke inhalation. Defendant also attacks the testimony of Dan Lopez and Jorel Cardona for various alleged inconsistencies or falsehoods, and appears to set forth that the State knew of the falsehoods but failed to correct them.

"To establish a Giglio violation, it must be shown that: (1) the testimony given was false; (2) the prosecutor knew the testimony was false; and (3) the statement was material." Guzman v. State, 868 So.2d 498, 505 (Fla. 2003). It is the Defendant's burden to establish the first two prongs. Guzman v. State, 941 So.2d 1045, 1050 (Fla. 2006). "Once the first two prongs are established, the false evidence is deemed material if there is any reasonable possibility that it could have affected the jury's verdict. Under this standard, the State has the burden to prove that the false testimony was not material by demonstrating it was harmless beyond a reasonable doubt." Rhodes v. State, 986 So.2d 501, 509 (Fla. 2008), *as modified on denial of reh'g* (July 3, 2008) (citations omitted).

First, the court notes Defendant has mischaracterized some of the testimony he is attacking (e.g., Defendant's assertion that Mr. Lopez testified "no one else was in the car" is not supported by the record where

and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief.") (citation omitted).

the record reflects the State asked Mr. Lopez, "Did you see anybody else in the car with him [Defendant] at that time?", and Mr. Lopez responded, "No sir."). Accordingly, attached to this order are the full trial testimonies of Jennifer Tabor, Jorel Cardona, and Dan Lopez, which were reviewed for appropriate context when analyzing the multitude of issues raised in this claim. The court also notes that various deposition transcripts and the transcripts of videotaped interviews are included in the case record, though they [are] not made part of the voluminous attachments to this order.

Second, the testimony of a witness is not false simply because it may seemingly conflict with the testimony of other witnesses or other evidence presented at trial. More specifically, despite [the] assertion by Defendant to the contrary, Ms. Tabor's testimony that Defendant confessed he shot the victim is not "false" simply because the medical examiner testified that she did not find a bullet in the victim's skull. Similarly (again, despite [the] assertion by the Defendant), Mr. Cardona's testimony that the car was coming from his right side down the street is not "false" simply because a crime scene technician testified during a deposition that the car was traveling north to south. If and when there are actual conflicting testimonies, it is up to the jury to believe or disbelieve a witness based on the whole of the evidence presented. After review, the court finds Defendant has failed to show witness testimonies were false or that the State knew testimonies to be false.

Third, as to various other issues set forth by Defendant in this claim, the record indicates defense counsel repeatedly attacked the credibility of . . . Ms. Tabor, Mr. Lopez, and Mr. Cardona – as set forth in Defendant's own motion – pointing out various inconsistencies with their testimonies (e.g., where Ms. Tabor thought Defendant was living). Additionally, the prior criminal histories of Ms. Tabor and Mr. Lopez were brought up, as were the plea agreements entered into with the State in exchange for truthful testimony in Defendant's case. Further, the court notes the record reflects it was known by the parties and the court prior to Ms. Tabor's testimony that there would likely be inconsistencies given information known to both the State and defense; thus, there was a proffer of Ms. Tabor's testimony outside the presence of the jury prior to her testifying. Additionally, the testimony of Mr. Cardona regarding his statements to law enforcement and an assistant state attorney was done outside the presence of the jury; thus, that testimony could not have affected the jury's judgment. Furthermore, it is apparent from the trial transcripts that the State and defense knew Mr. Cardona had made inconsistent statements in various accountings made to law enforcement

16

and in depositions. In turn, both attorneys repeatedly referenced the various statements made by Mr. Cardona, and the State specifically questioned him regarding his motive to tell the truth based on the timeframe of various statements (e.g. statements made when Mr. Cardona and his sister were living with/dependent on Defendant for support versus statements made when Mr. Cardona was no longer supported by Defendant).

Fourth, as to issues on which no evidence was presented (e.g. whose phone was used when Mr. Cardona called Defendant; the alleged agreement of [other individuals who did not testify] to "setup" Defendant), there can be no <u>Giglio</u> violation. (The court notes that defense counsel was very much aware of the circumstances concerning [these individuals]).

Given the foregoing, the court finds Defendant has failed to show any <u>Giglio</u> violation, and further finds that counsel was not ineffective, nor was Defendant prejudiced. Ground one is **denied**.

(Doc. 19-6, Ex. 17, pp. 1-3) (state court's record citations omitted) (emphasis in original).

Under *Giglio*, the prosecution violates a criminal defendant's due process rights by presenting evidence known to be false. 405 U.S. at 153-54.

To make out a valid *Giglio* claim, a petitioner "must establish that (1) the prosecutor knowingly used perjured testimony or failed to correct what he subsequently learned was false testimony; and (2) such use was material—i.e., that there is any reasonable likelihood that the false testimony could have affected the judgment."

*Ferguson v. Sec'y, Dep't of Corr.*, 580 F.3d 1183, 1208 (11th Cir. 2009) (quoting *Davis v. Terry*, 465 F.3d 1249, 1253 (11th Cir. 2006)).

Torres does not show that the state court unreasonably denied his claim that counsel was ineffective for not alleging a *Giglio* violation. The state court did not unreasonably conclude that while conflicts in different witnesses' testimonies present

a jury question, such conflicts do not necessarily establish a *Giglio* violation. Further, Torres has not established that any witness gave false testimony at trial, even if the witness's testimony was inconsistent with the witness's earlier statements. As the state court's detailed order explains, counsel was aware of inconsistencies in the witnesses' statements and thoroughly cross-examined the witnesses about such inconsistencies. (Doc. 19-3, Ex. 3, Vol. VII, pp. 836-37, 845-57, 877-78; Vol. VIII, pp. 968, 972-99, 1011-12, 1015-16, 1034-35; Vol. X, pp. 1147-50, 1166-81). Torres does not show that the state court's ruling was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable factual determination. He is not entitled to relief on Ground Two.

Ground Three

Torres contends that counsel was ineffective in failing to request a *Richardson* hearing on the State's alleged discovery violation.[6] Specifically, Torres argues that the State failed to disclose that prosecution witnesses would give testimony inconsistent with their earlier statements. Torres argues that the State's alleged lack of disclosure amounted to a discovery violation.

The state court denied Torres's claim:

Defendant alleges that counsel was ineffective for failing to request a <u>Richardson</u> hearing to inquire into the State's violation of discovery . . . Defendant asserts he was prejudiced because counsel's omissions hampered Defendant's trial preparation and strategy which deprived him of due process because he was not given prior access to relevant and

---

[6] *See Richardson v. State*, 246 So.2d 771, 774-75 (Fla. 1971) (holding that a trial court must inquire into circumstances of the State's alleged failure to comply with discovery rules and determine whether any noncompliance prejudiced the defendant).

material evidence which was necessary in order for him to prepare his defense. For the reasons discussed below, the court finds there was no <u>Brady</u> violation, nor was counsel ineffective by not seeking a <u>Richardson</u> hearing.

"When the State's failure to comply with the rules of discovery is brought to the court's attention, the court must conduct a <u>Richardson</u> hearing to determine if that failure has prejudiced the defendant . . . . the State must show in the record that the defendant was not prejudiced by the discovery violation." <u>Cascia v. State</u>, 24 So. 3d 1236, 1240-41 (Fla. 4th DCA 2009) (citations omitted). "<u>Richardson</u> mandates that once a discovery violation is revealed, the trial court must conduct an inquiry to determine the sanctions that should be imposed on the violating party." <u>Snelgrove v. State</u>, 921 So. 2d 560, 567 (Fla. 2005). In the postconviction context, <u>Brady</u> is usually applied. *See* <u>Snelgrove</u> at 567. *Cf.* <u>Collins v. State</u>, 671 So. 2d 827 (Fla. 2d DCA 1996). "Establishing a <u>Brady</u> violation requires the defendant to show: (1) that the evidence at issue is favorable to him, either because it is exculpatory or because it is impeaching; (2) that the evidence was suppressed by the State, either willfully or inadvertently; and (3) that the suppression resulted in prejudice." <u>Snelgrove v. State</u>, 921 So. 2d 560, 567-68 (Fla. 2006) (citations omitted).

[ ] Defendant asserts the State violated discovery by failing to make a full disclosure of the statements of Dan Lopez, Jorel Cardona, and Jennifer Tabor where the State did not disclose the anticipated and known change of witness testimony from initial statement and deposition, which Defendant asserts is the equivalent of no disclosure. The court's analysis in ground one is applicable to this claim, and is incorporated by reference. Neither inconsistencies in nor impeachment of witness testimony as set forth by Defendant in his motion indicate discovery violations by the State that would require the court to hold a <u>Richardson</u> hearing. The various inconsistencies in the testimonies/statements of Mr. Lopez, Mr. Cardona, and Ms. Tabor were well known to both the State and defense. Defense counsel used these discrepancies to repeatedly attack the credibility of the witnesses – referencing their prior statements/depositions, as well as their own culpability. The prosecutor himself questioned witnesses regarding the discrepancy in their statements. Additionally, some of the testimony of Mr. Cardona and Ms. Tabor was intentionally and preemptively proffered outside the presence of the jury. Defendant has failed to establish a <u>Brady</u> violation, and has not shown that the State failed to comply with the rules of discovery which would authorize defense counsel to request a <u>Richardson</u> hearing. Counsel was not ineffective, nor was Defendant prejudiced.

. . .

> In summary, the record indicates defense counsel was very well aware of and prepared for the various issues Defendant raises in ground four – the issues raised do not constitute "gotcha" tactics employed by the State. As there was no issue for counsel to request a <u>Richardson</u> hearing for, counsel was not ineffective. Further, Defendant has failed to show that any <u>Brady</u> violation exists. The court additionally finds that confidence in the outcome is not undermined; Defendant was not prejudiced. Ground four is **denied**.

(Doc. 19-6, Ex. 17, pp. 4-6) (court's record citation omitted).

Torres does not show entitlement to relief. To the extent that this claim relies on an application of *Richardson* and Florida's discovery rules, this Court must defer to the state court's conclusion that a motion for a *Richardson* hearing would have lacked merit. *See Pinkney v. Secretary, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' [a federal court] 'must defer to the state's construction of its own law' when the validity of the claim that . . . counsel failed to raise turns on state law." (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984))); *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997))).

20

To the extent the state court applied *Brady v. Maryland*, 373 U.S. 83 (1963),  in reaching its decision, Torres fails to show that state court's application of that decision was unreasonable. *Brady* holds that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. To establish a *Brady* violation, Torres must show that "(1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence was suppressed by the State, either willfully or inadvertently; and (3) the defendant incurred prejudice." *Wright v. Sec'y, Fla. Dep't of Corr.*, 761 F.3d 1256, 1278 (11th Cir. 2014). "A defendant cannot meet the second prong when, 'prior to trial, [he] had within [his] knowledge the information by which [he] could have ascertained the alleged *Brady* material.'" *Id.* (quoting *Maharaj v. Sec'y for Dep't of Corr.*, 432 F.3d 1292, 1315 (11th Cir. 2005)). The prejudice prong, "also referred to as the 'materiality prong,' is met when 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 433 (1995)).

As set out in the state court's order, Torres fails to establish that the State withheld witness statements. Additionally, counsel's comprehensive cross-examination of the witnesses shows that counsel knew of inconsistencies between the witnesses' trial testimonies and earlier statements. The record supports the state court's conclusion that Torres failed to establish a *Brady* violation. Accordingly, Torres has

not shown that trial counsel was ineffective in not seeking a *Richardson* hearing. Because Torres fails to establish that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination, he is not entitled to relief on Ground Three.

Ground Four

Torres argues that counsel was ineffective in not moving for a new trial based on the weight and credibility of the evidence. The state court denied this claim:

> Defendant asserts counsel was ineffective for failing to file a motion for new trial. Defendant states that the evidence consisted of false, perjured, and unreliable testimony by State witnesses Dan Lopez, Jorel Cardona, and Jennifer Tabor. The "weight of the evidence" standard is used when evaluating a motion for a new trial. Here, there was testimony from multiple witnesses that Defendant felt the victim owed him money and that he planned to rob the victim. There was testimony from multiple eyewitnesses who saw the victim's body and either helped or witnessed Defendant move the body and then burn the car. There was also testimony that Defendant confessed to kidnapping the victim, shooting him, and burning the car. The medical examiner testified that the victim died from blunt impact to the head, thermal burns to 100% of total body surface area, and inhalation of smoke. No defense witnesses were called.
>
> Given all the testimony at trial, there was substantial, competent evidence to support the verdict and judgment. Counsel was not ineffective for failing to file a motion for a new trial; nor was Defendant prejudiced. Ground five is **denied**.

(Doc. 19-6, Ex. 17, p. 6) (court's record citation omitted) (emphasis in original).

Torres has not shown entitlement to relief. Florida Rule of Criminal Procedure 3.600 sets out the bases for a Florida court to grant a new trial. The ineffective assistance claim raised in Torres's petition turns on the question of whether a motion for new trial would have succeeded under this provision of state law. This Court must

22

defer to the state court's conclusion that a motion for new trial was not warranted under Florida law. *See Pinkney* 876 F.3d at 1295; *Herring*, 397 F.3d at 1354-55. Torres argues that the state court's order erroneously addressed the sufficiency of the evidence, rather than the weight and credibility of the evidence. *See* Rule 3.600(a)(2) (stating that a motion for new trial may be granted if the verdict is contrary to the weight of the evidence). However, any such error would go to the correctness of the state court's decision of state law. This Court does not evaluate whether the state court correctly determined state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[The United States Supreme Court has] repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."). Torres fails to show that the state court's denial of his claim involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. Accordingly, Torres is not entitled to relief on Ground Four.

Ground Five

Torres argues that trial counsel was ineffective in failing to timely object when the trial court erroneously told the jury they could not have Jorel Cardona's testimony read back to them. When Torres presented this ineffective assistance claim to the state court, the state court noted that Torres "assert[ed] it is impossible to determine the effect of the erroneous denial of the juror request for a read back." (Doc. 19-6, Ex. 17, p. 6). The Court therefore rejected Torres's claim on the prejudice prong of *Strickland*, stating that "based on Defendant's own assertion that there can be no determination

23

made as to the effect this had on the case outcome, the court finds that Defendant was not prejudiced by counsel's conduct." (*Id.*, pp. 6-7).

As Respondent clarifies, the jury did not ask to have Cardona's testimony read back to them. The jury actually asked the court for a transcript of Cardona's testimony. (Doc. 19-3, Ex. 3, Vol. XI, p. 1382). The trial court informed the jury they could not have a transcript. (*Id.*, pp. 1383-84). After the jury resumed deliberations, the trial court reviewed relevant case law. The court and the parties agreed that while providing a transcript would not be permissible under Florida law, reading back testimony would be permissible. (*Id.*, pp. 1385-97). The court asked the parties whether they objected to the court advising the jury they could request a read back of testimony. (*Id.*, pp. 1386-87). Counsel did object to potentially interrupting deliberations at that point, which was approximately four hours after the jury's request for a transcript. (*Id.*, pp. 1387-88. 1396). Counsel conferred with Torres, who told the court that he had no questions about what counsel said. (*Id.*, pp. 1391-95). Thus, the jury was not informed of the possibility of having testimony read back to them upon request. (*Id.*, p. 1396).

In his reply, apparently realizing his inaccurate factual assertion, Torres claims that counsel was ineffective for not requesting that testimony be read back after the jury requested a transcript. As an initial matter, to the extent Torres still intends to pursue the claim as raised in his postconviction motion, he cannot show entitlement to federal habeas relief. The state court ruled on the claim as presented to it, and any factual inaccuracy underlying Torres's claim was due to Torres's description of events. The state court did not unreasonably conclude that Torres failed to show prejudice.

To the extent Torres now presents a different claim in his reply, he is not entitled to proceed on such a claim. *See Herring*, 397 F.3d at 1342 ("[A]rguments raised for the first time in a reply brief are not properly before a reviewing court.") (citation omitted). In addition, such a claim is unexhausted and is now procedurally defaulted. *See Smith*, 256 F.3d at 1138. Torres fails to excuse the default. *See id.*

Notwithstanding the default, Torres has not shown that he is entitled to federal habeas relief on a claim that counsel was ineffective for not requesting that testimony be read back because he cannot show *Strickland* prejudice. Even if counsel had requested that Cardona's testimony be read back to the jury, whether to read back testimony would have been at the judge's discretion. *See* Fla. R. Crim. P. 3.410(a). Moreover, while Torres suggests that the jurors asked about Cardona's testimony to clear up a misstatement by counsel during closing arguments about that testimony, Torres merely speculates about the jurors' reasoning. Even assuming that the judge permitted testimony to be read back to the jury, Torres only speculates how this would have affected deliberations. Speculation cannot sustain an ineffective assistance claim. *Tejada*, 941 F.2d at 1559; *Wilson*, 962 F.2d at 998. Torres does not show reasonable probability of a different outcome had counsel requested that testimony be read back to the jury. Accordingly, Torres is not entitled to relief on Ground Five.

Ground Six

Torres asserts that trial counsel was ineffective in failing to timely move for the appointment of an affordable expert on law enforcement interrogations. Torres states that Jorel Cardona was interviewed by police when he was 16 years old without a

25

parent present. He also alleges that police denied Cardona's requests to go home and talk to his sister. Torres claims that without an expert, he could not raise the question of whether the interview exceeded the bounds of acceptable police conduct.

The state court denied Torres's claims:

> Defendant asserts counsel was ineffective for failing to pursue a timely motion to appoint an expert. Defendant states that counsel filed a motion for appointment of a confidential expert advisor on the issue of law enforcement interrogations, specifically as concerning Jorel Cardona. He asserts he was prejudiced in his right to present a complete and informed defense. Defendant states there was a need for an expert to testify as to Mr. Cardona's mental state and the propriety of the interview techniques employed by police.
>
> However, using an expert witness to provide an opinion regarding the mental state of another witness (i.e. attack the other witness's credibility) would be improper. *See generally* <u>Caban v. State</u>, 9 So.3d 50 (Fla. 5th DCA 2009). Further, there is no indication that the defense expert would have even been called as a witness. *See attached trial transcript pages 149 and 209.* Regardless, counsel did file a motion to appoint the expert prior to the jury trial, the Justice Administrative Commission objected based on cost, a hearing was held a[t] which the court heard argument from the State and defense, and the court entered an oral ruling followed by a written supplement denying the motion. Defense counsel indicated that he had another expert in mind, but the fee was a lot higher and would not be approved either. At the behest of Defendant, defense counsel moved for a continuance, but the motion was denied by the court.
>
> When cross-examining Mr. Cardona, defense counsel repeatedly questioned him regarding the circumstances of his interview with law enforcement. . . . *see generally* <u>Caban</u> (the best place to question a witness as to possible bias is on cross-examination of the witness and not through disparagement by other witnesses).
>
> The court finds counsel was not ineffective, nor was Defendant prejudiced. Ground six is **denied**.

(Doc. 19-6, Ex. 17, p. 7) (some of the court's record citations omitted).

Torres has not shown that the state court unreasonably rejected his claim. As the state court noted, it is not apparent that any expert would have been called at a trial. Specifically, defense counsel stated that he would not call an expert if the expert's conclusion was that the circumstances or techniques of the interrogation did not affect any testimony. (Doc. 19-2, Ex. 3, Vol. I, p. 149; Vol. II, p. 209).

As counsel's statements indicate, what conclusions an expert might have reached or whether an expert would have been able to offer testimony beneficial to Torres were unknown. Torres does not identify any potential expert witness or come forward with any evidence of what such an expert would have said. His claim is therefore too speculative to warrant federal habeas relief. *See Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'" (quoting *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985))). Additionally, as the state court noted, counsel extensively cross-examined Cardona about his police interview and about inconsistencies between his trial testimony and his earlier statements. (Doc. 19-3, Ex. 3, Vol. VIII, pp. 968-970; 972-99; 1011-16; 1034-35). Torres has not shown that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination. Accordingly, he is not entitled to relief on Ground Six.

It is therefore **ORDERED** that Torres's second amended petition (Doc. 14) is **DENIED**.[7] The **CLERK** is directed to enter judgment against Torres and to **CLOSE** this case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

It is further **ORDERED** that Torres is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a COA must first issue. *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To obtain a certificate of appealability, Torres must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Torres has not made the requisite showing. Finally, because Torres is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on July 21, 2021.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

---

[7] In his memorandum, Torres appears to request an evidentiary hearing. An evidentiary hearing is not warranted. *See Schriro*, 550 U.S. at 474 ("[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

Jose Antonio Torres
Counsel of Record